IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   Criminal No. 20-00089-JB |
| | * |
| BOBBY JOSEPH DEWAYNE PALMER | * |

## PLEA AGREEMENT

The abovecaptioned defendant, represented by his counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

### RIGHTS OF THE DEFENDANT

1. The defendant understands his rights as follows:

    a. To be represented by an attorney;

    b. To plead not guilty;

    c. To have a trial by an impartial jury;

    d. To confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense; and

    e. To not be compelled to incriminate himself.

### WAIVER OF RIGHTS AND PLEA OF GUILTY

2. The defendant waives rights b through e, listed above, and pleads guilty to Count 1 of the Indictment, charging a violation of Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute methamphetamine.

3. The defendant understands that the statements he makes under oath in the plea of guilty must be completely truthful and that he can be prosecuted for making false

1

statements or perjury, or receive a perjury enhancement at sentencing, for any false statements he makes intentionally in this plea of guilty.

4. The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5. The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6. The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charge which has been brought against him. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence and the law as it relates to the facts of his offense.

7. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charge. The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

8. A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct. Alterations to the Plea Agreement or

Factual Resume initialed only by the defendant and his counsel are not part of this agreement and are not agreed to by the United States.

9. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court will impose. The defendant is pleading guilty because he is guilty.

10. The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

*KSH on behalf of GAB*

## PENALTY

11. The maximum penalty the Court could impose on Count 1 of the Indictment is:

    a. Minimum mandatory 10 years to life ~~imprisonment~~;

    b. A fine not to exceed $10,000,000;

    c. A term of supervised release of at least 5 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

    d. A mandatory special assessment of $100;

3

      e.      Forfeiture of property.

## SENTENCING

12. The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

13. The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

14. The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

15. Both the defendant and the United States are free to allocute fully at the time of

sentencing.

16. The defendant agrees to tender $100 to the U.S. District Court Clerk in satisfaction of the mandatory special assessments in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of his sentencing.

## FORFEITURE

17. The defendant agrees to confess the forfeiture to the United States of all properties and firearms which represent proceeds of his criminal activities or which facilitated any aspect of these illegal activities, including but not limited to all property identified in the forfeiture notice of the Indictment.

## FINANCIAL OBLIGATIONS

18. The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

## UNITED STATES' OBLIGATIONS

19. The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss any

remaining counts once sentence is imposed. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

20. The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court.

### APPLICATION OF U.S.S.G. § 5K1.1 AND/OR FED.R.CRIM.P. 35

21. The defendant understands and agrees that he has no right to cooperate, and that the decision whether to allow him to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to allow the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

   a. The defendant shall fully, completely, and truthfully respond to all questions put to him by law enforcement authorities regarding the underlying facts of the offense(s) with which he is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which he has information or knowledge.

   b. The defendant acknowledges that he understands that he shall provide truthful and complete information regarding any offense about which he has knowledge or information regardless of whether law enforcement authorities question him specifically about any such offense. This provision requires the defendant to divulge all information available to

    him even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c. The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which his cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance he shall provide. This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully before any grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d. If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e. The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in his possession or

|     |     |
| --- | --- |
|     | under his control and which are relevant to his participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense. This obligation is a continuing one and includes materials that the defendant may acquire, obtain or have access to after the execution of this agreement. |
| f.  | The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another. |
| g.  | If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the |

    defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance. The defendant also understands that, should he provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h.    The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by him from his illegal activities or obtained by others associated with him or of which he has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

(1)    permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Indictment; and

(2)    permit the United States to initiate and proceed with the

9

       prosecution on any other charges arising from a breach of this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during his breached cooperation. Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of such information or any evidence derived from such information.

i.    Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during his cooperation. The defendant acknowledges and agrees that the information that he discloses to the United States pursuant to this agreement may be used against him in any such prosecution.

j.    The United States and the defendant agree that the defendant will continue his cooperation even after he is sentenced in the instant matter. His failure to continue his cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate the charges and the prosecution of the charges in the Indictment, which are to be dismissed in accordance with this agreement.

Under these circumstances, the defendant expressly waives any rights he may have under the statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

22. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence (including a sentence imposed on revocation of probation or supervised release) in any district court or appellate court proceedings.

   a. **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

   (1) any sentence imposed in excess of the statutory maximum;

   (2) any sentence which constitutes an upward departure or variance from the advisory guideline range.

   In addition, the defendant further reserves the right to claim ineffective assistance of counsel in a direct appeal or a petition filed pursuant to Title 28, United States Code, Section 2255.

23. If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

24. The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive

11

amendment to the Sentencing Guidelines which would affect the sentence.

25. If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

26. The defendant understands that if he breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that he might have under the Sixth Amendment and/or Speedy Trial Act.

27. In addition, if the defendant is released from detention prior to sentencing, he understands that the United States will no longer be bound by this agreement if he violates any condition of his release prior to sentencing or prior to serving his sentence after it is imposed.

## ENTIRETY OF AGREEMENT

28. This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: 07/09/2021                          *s/ George Martin*
                                          George Martin, Deputy Criminal Chief
                                          Assistant United States Attorney

Date: 07/09/21                            s/Gloria A. Bedwell
                                          Gloria A. Bedwell
                                          Assistant United States Attorney

I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 11/22/21                            x *Bobby Palmer*
                                          Bobby Joseph Dewayne Palmer
                                          Defendant

I am the attorney for the defendant. I have fully explained his rights to him with respect to the offense(s) charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, his decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 11/22/21                            *Gordon Armstrong*
                                          Gordon G. Armstrong, III, Esq., Defense Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   Criminal No. 20-00089-JB |
| | * |
| BOBBY JOSEPH DEWAYNE PALMER | * |

## FACTUAL RESUME

The abovecaptioned defendant admits the allegations of Count 1 of the Indictment.

## ELEMENTS OF THE OFFENSE

**Count One**: The defendant understands that in order to prove a violation of Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute methamphetamine, the United States must prove the following beyond a reasonable doubt:

First, that two or more individuals came to a mutual understanding to commit an unlawful act, in this case, the possession with intent to distribute methamphetamine, a Schedule II controlled substance; and second, that the defendant, knowing of the unlawful purpose of the plan, knowingly and intentionally joined in the plan. The Government must also prove that the offense involved more than 50 grams of methamphetamine.

## OFFENSE CONDUCT

The defendant admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for his plea of guilty. The statement of facts does not contain each and every fact known to the defendant and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement.

1

**Facts**

On January 12, 2018, at about 11:00 p.m., a Bay Minette police officer observed a Ford Taurus at Highway 31 South and Neighbors Lane. He noticed that the vehicle failed to maintain its lane. It was traveling north on highway 31 South and it touched the white fog line multiple times. The officer believed the driver of the Taurus might be intoxicated or otherwise impaired and he decided to make a stop of the vehicle. It stopped after he activated his blue lights. He approached the driver's side of the vehicle and made contact with the driver, subsequently identified as the defendant, Bobby Joseph Dwayne Palmer. The officer identified himself and explained to Palmer the reason for the stop. As he spoke to Palmer, he detected the odor of marijuana emanating from the vehicle and he observed an open beer can in the center console. He asked Palmer to step out of the vehicle and conducted a pat-down for officer safety. Palmer was placed in handcuffs for the same reason.

There was a passenger in the vehicle, identified as C.C. He also asked C.C. to step out of the vehicle and conducted a pat-down of C.C. C.C. was also cuffed and both subjects were advised that they were being detained. The officer searched the vehicle based on probable cause from the odor of marijuana coming from the vehicle. He found 3.2 grams of marijuana in the driver's side door. Palmer claimed the marijuana. He told the officer it was a couple of grams.

The officer also found a black cell phone box on the passenger side floorboard. There was a meth pipe inside the box wrapped in a black cloth. Neither Palmer nor C.C. claimed the meth pipe, which contained what appeared to be methamphetamine residue. Both were arrested for paraphernalia and Palmer was also arrested for marijuana second. The officer transported Palmer to the jail, and when he removed Palmer from the back seat, he observed several pieces

of methamphetamine in the back seat. Palmer was the only subject transported in his vehicle, and it had been inspected prior to the beginning of the officer's shift. The evidence was processed and placed in the evidence locker. The DFS tox report showed that the substance was methamphetamine, but it does not reflect a weight.

On June 14, 2018, Baldwin County sheriff's investigators met with a confidential informant to arrange to purchase methamphetamine from the defendant Palmer. At 9:49 p.m., the officers searched the informant and the informant's vehicle for drugs, money, weapons or other contraband. None was found. The informant was equipped with electronic devices to record the contact with Palmer and provided with $200 of prerecorded cash to make the buy. The informant met Palmer at a residence on Highway 225 just outside Bay Minette. Just as the informant arrived, Palmer advised the informant to meet him at his residence on Jacobee Court in Bay Minette. The informant traveled to Jacobee Court, where the drug deal took place. The informant left at 11:19 p.m. to return to the prearranged meeting place. The informant provided a written statement summarizing the deal with Palmer. The drugs tested at 13.5 grams at 79% purity, or 10.6 grams of actual methamphetamine.

On June 20, 2018, Baldwin County investigators used a confidential informant to make a controlled buy of meth ice from the defendant Palmer. The informant and the informant's vehicle were searched and the informant was equipped with electronic devices to record the contact with the target. At approximately 14:20 into the recording, the informant commented that "Candy" (co-defendant Candice Cox) drove past them in a silver vehicle. The informant arrives at Palmer's house and waits for 10-15 minutes. Another subject enters the conversation, whom the CI identifies as "Bad." Surveillance officers observed the subject believed to be

"Bad," when he arrive at the house next door to Palmer's residence in a vehicle with co-defendant Cox. They observed "Bad" walk to Palmer's residence and enter.

During the recorded conversations immediately preceding the CI's departure from Palmer's residence, the informant stated that the drug weight it was not the correct amount. "Bad" said he would make it up next time. The DEA lab reports shows that the drugs bought in this deal weighed 3.5 grams at 86% purity, or 3 grams of methamphetamine actual.

The Bay Minette Police Department had received several calls for service at the residence Palmer shared with his girlfriend S.S, including drug activity and shots fired. On July 18, 2018, Baldwin County Sheriff's Deputy Justin Means contacted Bay Minette Police Chief Al Tolbert to inform him that the sheriff's office had a warrant for Palmer. Chief Tolbert agreed to take care of the county warrant, as the police department also had a warrant for Palmer. Chief Tolbert called Deputy Means to let him know that they had served the warrant and had cleared the residence. There were four subjects detained at the residence, but Palmer was not present. He said they saw drug paraphernalia in plain view during the time they cleared the house. He also informed Deputy Means that there was a locked door inside for one of the rooms.

Deputy Means obtained a search warrant for the residence and traveled to the scene. He spoke with Chief Tolbert. S.S. had arrived at the scene after it was cleared and told the officers that everything inside the residence belonged to her. She was disorderly and refused to obey officer's commands, so she had been arrested. In searching the residence pursuant to the search warrant, officers seized the drug paraphernalia observed by Chief Tolbert when the house was cleared, which included a digital scale, cut corners of plastic baggies used for packaging drugs, and marijuana cigar residue. When the officers forced entry into the locked room, identified as

Palmer's room, they seized 1.2 grams of methamphetamine, two ecstasy pills, a Jennings, Model J22, .22 caliber pistol, serial number 706680, two glass pipes used to ingest methamphetamine and mail addressed to Palmer at the residence. Palmer was not located and the warrants for his arrest remained outstanding.

Palmer is a convicted felon for unlawful possession of a controlled substance. His first conviction for Unlawful Possession of a Controlled Substance is in Baldwin County Circuit Court, CC2013-567, dated June 19, 2015. The second one is for Unlawful Possession of a Controlled Substance, in Baldwin County Circuit Court, case number CC2018-000642, dated March 22, 2018. At that time, he was placed on probation for two years. The firearm was not manufactured in Alabama, and therefore was transported in interstate commerce by the time it was recovered in the warrant in July of 2018.

Co-defendant Von Clay Bennett was identified as a source of supply for methamphetamine distributed by co-defendant Cox and "Bad," and other conspirators. Bennett was arrested in August of 2018 at an apartment on Azalea Road in Mobile where he was staying with a girlfriend. Mobile County sheriff's deputies obtained a search warrant for Bennett's apartment and when it was executed there, they seized a Smith & Wesson .357 magnum revolver, a "Hell Pup" AK style pistol, and a Glock handgun with a 100-round drum. There were several extra magazines for other types of guns and ammunition for a 7.62 x39 x4. The officers seized some mail addressed to Bennett at the address searched, photographs, two digital scales, several baggies used to package drugs, prescription pills, codeine cough syrup and a small amount of meth ice. This evidence and Bennett's cell phone were turned over to the Baldwin County investigators. The methamphetamine tested positive at 43.1 grams at 95% purity, or

40.9 grams of actual methamphetamine.

Bennett agreed to cooperate with the government after his arrest on the instant federal charges. Among those he implicated was the defendant Palmer. Bennett stated that he sold 3.5 grams of methamphetamine ice to Palmer every two days for a period of approximately six months during the conspiracy. Co-defendant Candice Cox was also arrested on the instant federal charges, and she too agreed to cooperate with the government. She stated that she sold Palmer an ounce of methamphetamine at least one time, and she sold him other amounts over time. The estimated total of methamphetamine ice Cox sold to Palmer during the conspiracy is approximately three ounces.

The defendant agrees that he is accountable for approximately 335 grams of methamphetamine actual as relevant conduct, and that the Government can prove that amount beyond a reasonable doubt. The defendant admits that the property described in the Forfeiture Notice of the Indictment is subject to forfeiture as property which facilitated the commission of the offenses alleged in the Indictment.

AGREED TO AND SIGNED.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: 07/09/2021

*s/ George Martin*
George Martin, Deputy Criminal Chief
Assistant United States Attorney

Date: 7/9/21

*s/ Gloria A. Bedwell*
Gloria A. Bedwell
Assistant United States Attorney

Date: 11/22/2021

X _____
Bobby Joseph Dewayne Palmer
Defendant

Date: 11/22/2021

_____
Gordon G. Armstrong, III, Esq.
Attorney for Defendant